**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SERV–AIR, INC., Respondent.**

**No. 70–70.**

United States Court of Appeals, Tenth Circuit.

Sept. 9, 1970.

Glen Bendixsen, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore and Robertamarie Kiley, Attys., N. L. R. B., on the brief), for petitioner.

Frank Carter, Enid, Okl. (Stephen Jones, Enid, Okl., on the brief), for respondent.

Before BREITENSTEIN, HILL and HOLLOWAY, Circuit Judges.

HILL, Circuit Judge.

██ The National Labor Relations Board is before this court petitioning for enforcement of its supplemental order issued against Serv-Air, Inc., requiring the latter to reinstate R. A. Chodrick to his former position. The order was made on a finding of an unfair labor practice by Serv-Air, in violation of section 8(a) (3) and (1) of the Act. The familiar issue posed is whether substantial evidence supports the decision that Serv-Air suspended and demoted Chodrick in violation of the Act.

R. A. Chodrick was first employed by the Company in 1960 as a hand lineman at Vance Air Force Base. About six months later he was advanced to crew chief of fire fighters. In 1964 the firemen were unionized; Chodrick joined and became a shop steward.

Chodrick has undeniably been a union activist. Since June, 1964, he has served on the union's negotiation committee; in September, 1964, he led a union walkout; and in February, 1966, he was a leader of a group attempting to present the company with a written grievance over the training schedule. The latter incident resulted in the firing of Chodrick and six others when they refused to drill. Chodrick's discharge was reduced to a suspension but there has been continued friction between the crew chief and his superiors.

Out of this background arose the incident relevant to this petition for enforcement. In July, 1966, the Company altered its pay procedures by depositing employee salaries in a bank rather than paying the sum directly to each employee. Because of the obvious inconvenience resulting from the change, many of the employees became upset; most considered it to be a thinly veiled attempt to coerce them into opening accounts in the bank because Serv-Air's president was a stockholder and board member of that bank.

On August 6, 1966, two fire fighters (union members) at Vance Air Force Base left their jobs without permission, apparently to protest the change in pay procedures. For leaving their duty post each was immediately suspended. The next day Chodrick's crew went on duty. Because men on the earlier shift had reported being bitten by bugs Chodrick's crew, with his permission, decided to scrub down their sleeping quarters and air out their mattresses. The mattresses were taken outside—two were passed through a window resulting in about $8.00 damage—and laid out to air. The crew then went to chow.

Meanwhile, Terrell, the Assistant Fire Chief, was notified and went to the crash station. After observing the situation and apparently assuming it was a protest related to the suspension of the two union men on the previous day, he called Moxley, the Fire Chief, saying he thought he had "an incident" on his hands. Moxley told Terrell to get the Air Force Security Police, have photographs taken, and a report made. Next Terrell sought out Chodrick and requested an explanation. The reply was that the men were simply attempting to air out the mattresses to rid them of bugs.

Subsequently, Cumpston, director of base operations, asked Moxley what had caused the incident and Moxley answered: "You know as well as I know." Then, referring to Crew Chief Chodrick, he said: "It looks like this man is continually giving us trouble. It looks like he's come to the final point. We are going to have to take some action on the individual." Thereafter Chodrick was

suspended for a day and demoted to crash-fireman.

The Company argues that Chodrick's union activities had nothing to do with the discipline. In their words, "he was laid off because of failure to perform as Crew Chief, his arrogant attitude, his unwillingness to follow prescribed rules and regulations established by Serv-Air, Inc., and the United States Air Force and his callous disregard for the safety of his men."

Chief Moxley, by his testimony, presented a good case for the Company. But that testimony notwithstanding, the Examiner's findings are supported by substantial evidence. The Examiner's observations are clear, pertinent, and concise, and the following excerpts summarize our own conclusions.

"[A]lthough the purport of Moxley's testimony is that in his opinion Chodrick had been an unsatisfactory crew chief over a long period of time, Moxley was unable to advert to any specific misconduct or act of misfeasance on the part of Chodrick occurring later then [sic] April, 1965 (except for incidents which the Board in prior proceedings found were within the protection of the Act) other than matters which had been continuing for long periods of time."

"The strenuous effort on the part of respondent to create the appearance of a serious dereliction by Chodrick and members of his crew from something so trivial suggests that Respondent was looking for an opportunity (and judging from the incident onto which it lached—no matter how slight or trivial) for demoting Chodrick. To the argument that the August 7 incident was merely the last straw that broke the camel's back, it is noted that Respondent was able only to point to outdated misdeeds on the part of Chodrick to demonstrate his unfitness for his job, and several of those matters were incidents with respect to which the Board has found that the Respondent had acted unlawfully. Accordingly, I find no merit to Respondent's defense that Chodrick

was disciplined on August 7, 1966, for 'good and just cause.' "

Serv-Air also charges that the Board violated its rules and regulations in denying the Company's motions for reopening, reconsideration and rehearing of the case to permit introduction of new and material evidence. A bit of background information is necessary to fully comprehend the argument. The Board's initial decision in this case issued June 27, 1967. On January 17, 1968, this court issued its decision in a related case, Serv-Air, Inc. v. N. L. R. B., 395 F.2d 557 (10th Cir. 1968), reversing a part of the Board's decision and remanding that case to the Board for reconsideration. Inasmuch as some of the Board's findings in the instant case were based on the earlier decision, enforcement proceedings were held in abeyance while the earlier decision was reconsidered. On September 4, 1969, following modification by the Board of its earlier decision, the Board sought the position of the parties as to the effect of such modification on the instant decision. On October 21, 1969, the Board issued a supplemental decision in the present case, reversing it with respect to the discharge of another employee, but reaffirming with respect to the suspension and demotion of Chodrick.

On November 21, 1969, the motions for reconsideration, rehearing and reopening of the record were filed by Serv-Air. The substance of those motions concerns findings by a federal district court in an independent civil proceeding which Serv-Air claims to be related to the same incident over which Chodrick was suspended and demoted.

Under section 10(e) of the Act we are empowered to order a remand where it is shown that the "evidence is material and there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board." That is the same test contained in the Board's regulations.

■ Without considering the reasonableness of the failure to adduce the al-

leged new evidence, we do not consider the district court findings to be of sufficient materiality to the instant suit to call for a reopening, reconsideration or rehearing. The incident over which the civil suit was litigated occurred more than one year prior to Chodrick's suspension and demotion. Moreover, the primary reason given for the demotion and suspension concerned only the mattress incident and not the June, 1965, occurrence. And it is of more than casual interest to us that although the Company now attaches great significance to the June, 1965, incident, the record reveals that no disciplinary action whatsoever was taken against Chief Chodrick at the time of the June, 1965, fire, or subsequently. On this state of the record we cannot justify Serv-Air's motions and conclude that the Board was within its discretion in denying same.

Enforcement of the order of the National Labor Relations Board is hereby granted.